IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

BARBARA BURNETT                                              PLAINTIFF

v.                          No. 2:23-cv-242-DPM

MARIANNA POLICE DEPARTMENT
and CITY OF MARIANNA, ARKANSAS              DEFENDANTS

ORDER

Marianna is a town of a few thousand in the Arkansas Delta. Its police department is small—ten to fifteen officers, give or take. *Doc. 19-1 at 79*; *Doc. 19-2 at 23–24*. There are also family connections within the department. Barbara Burnett has worked there as a dispatcher for more than four decades. In recent years, she investigated internal affairs complaints, too. Her long career in the department had been a happy one. That changed after Marianna officers pulled over Burnett's daughter. Burnett said that her daughter was racially profiled and mistreated. A few months later, her internal affairs duties were reassigned. Weeks after that, she was placed on administrative leave. Burnett says this was retaliation and discrimination because she's a black woman. Marianna disagrees. It moves for summary judgment. Burnett wants a trial.

Most of the essential facts are undisputed. Burnett's amended response, *Doc. 57*, to the Local Rule 56.1 statement is full of legal

arguments and unimportant clarifications. It defeats the purpose of the Local Rule. So, the Court must work from the record. Where there is some genuine dispute, the following summary takes the material facts in the light most favorable to Burnett. *Van Dorn v. Hunter*, 919 F.3d 541, 544 (8th Cir. 2019).

\*

Burnett's sister died in May 2022. Her mother died three days later. The family gathered in Marianna the following Saturday to bury their kin. It was Memorial Day weekend.

Burnett received an anonymous phone call while hosting the repast. The police had pulled over her daughter, Jamie Mahone, at the Majestic liquor store. When Burnett arrived, Mahone was "screaming and hollering." *Doc. 19-1 at 25.* Mahone accused one officer, Daniel Lawson, of injuring her by wrenching her arms while she was in handcuffs and shoving her against a car. *Burnett Ex. 23.* And she was upset that Lawson and the other officers originally at the scene, Dale Acosta and Timothy Turley, had refused to call her mother. (Mahone was thirty-seven years old. *Burnett Ex. 23 at 4.*)

Burnett wasn't the only member of the Marianna Police Department who rushed to the Majestic. Corporal Adrian Smith got there first, and he called Burnett before she arrived. *Doc. 19-1 at 24–25.* Chief Daniel Strickland arrived after hearing about the stop on the

-2-

police radio. *Doc. 19-2 at 70.* Ashley Lawson—also a Marianna officer and Officer Daniel Lawson's wife—was in the car with Chief Strickland. *Burnett Ex. 23 at 78–79.* After speaking with Burnett, Chief Strickland released Mahone to her. Mahone wasn't given a ticket at the scene.

Burnett went to the station on Memorial Day to make a complaint to Chief Strickland. *Doc. 19-1 at 29 & 89–90.* They reviewed Acosta's body camera footage together. The video from Daniel Lawson's body camera was quite short. Burnett said she suspected foul play. Mahone soon submitted an internal affairs complaint about how she was treated. Days later, she received by mail a ticket for inattentive driving. In the months that followed, Burnett and Chief Strickland talked constantly about how Burnett was going to support her daughter. *Doc. 19-1 at 90.* Despite all this, Burnett and Chief Strickland continued to have a great relationship. *Doc. 19-1 at 37.*

Burnett worked in dispatch but, beginning around 2019 or 2020, she also investigated internal affairs complaints. On 1 August 2022, a few months after the Mahone incident, Chief Strickland reassigned her internal affairs responsibilities to Ashley Lawson. *Doc. 19-1 at 14–15.* Earlier that day, Burnett had written up Officer Tara Lawson—Officer Daniel Lawson's daughter from his first marriage—for failing to remove a recovered gun from the police's stolen gun database. *Doc. 19-1 at 20–21, 30 & 37.* (The Marianna Police Department, while

small, was full of Lawsons.  Tara Lawson and Officer Turley also have a child together.)

Weeks later, Montana Smith—Ashley Lawson's daughter from her first marriage—applied for a custodial job in the department. Burnett received the results of Smith's drug test, which were positive for marijuana and cocaine.  Burnett took a picture of the results and texted them to Chief Strickland, who was out of the office.  Chief Stickland responded "LOL." *Doc. 19-1 at 38.*

Smith was not amused.  She submitted a written complaint to Chief Stickland claiming that Burnett had violated HIPPA and her civil rights. *Doc. 19-3.*  Chief Strickland called Burnett and Ashley Lawson in for a meeting on 30 September 2022.  Burnett and Ashley Lawson got into a loud argument during the meeting.  Chief Strickland then told Burnett that she would be placed on administrative leave pending the investigation of the HIPPA complaint.  Burnett demanded that he put his decision in writing.  He did;  and his memo said that she would be on leave without pay. *Doc. 19-1 at 44–46;  Doc. 19–4.*  The next week, Burnett submitted a doctor's note saying she needed to be on medical leave. *Doc. 19-1 at 50–51.*  She therefore continued to be paid but depleted her accrued sick and leave time.

Mahone's trial for the traffic ticket was held on 17 October 2022. *Doc. 19-1 at 81.*  Burnett testified on her daughter's behalf.  The charges against Mahone were dismissed. *Burnett Ex. 31.*  Two days later, Chief

Strickland hand delivered a memo to Burnett saying that his earlier memo was amended to state that she would be on leave with pay. It also provided that she was no longer on administrative leave and could return to work when released by her doctor. The memo was dated October 17th, the same day as Mahone's trial. Burnett continued on sick leave until March 2023, when she returned to her old job, but without the internal affairs responsibilities. *Doc. 19-1 at 51–52.* After the events at issue in this case, she served as Marianna's interim police chief.

\*

One preliminary issue. Burnett sued the city of Marianna and the police department. She concedes that the police department is not a proper defendant. *Doc. 50 at 2.* It will therefore be dismissed with prejudice. *Ketchum v. City of West Memphis*, 974 F.2d 81, 82 (8th Cir. 1992) (Richard S. Arnold, J.).

\*

Burnett brings discrimination, hostile work environment, and retaliation claims under Title VII and the Arkansas Civil Rights Act. *Doc. 2 at 8–10.* In her summary judgment papers, Burnett said she intended to amend her complaint "adding new causes of action abuse of power, violation of the Due Process Clause, and whistleblower."

*Doc. 50 at 22; see also Doc. 49 at 1.* Burnett also mentioned 42 U.S.C. § 1983. *Doc. 50 at 22.* No motion to amend was filed. The deadline for proposing amended pleadings passed in February 2025. *Doc. 8 at 1.* That was approximately eight months before Burnett responded to the summary judgment motion. A party cannot amend its pleadings in briefing. *Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1140 (8th Cir. 2014).

There's no dispute that Chief Strickland (a black man) reassigned internal affairs duties from Burnett (a black woman) to Ashley Lawson (a white woman). The importance of those responsibilities is in dispute. The Court assumes, though, that the reassignment qualified as an adverse employment action. *Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024). And it also assumes that Burnett established a *prima facie* case of both race and sex discrimination even though the internal affairs responsibilities were reassigned to a woman. *Johnson v. Baptist Medical Center*, 97 F.3d 1070, 1072 (8th Cir. 1996) (Morris S. Arnold, J.).

Chief Strickland had a nondiscriminatory reason for the reassignment; and Burnett hasn't shown pretext. Ashley Lawson completed internal affairs and investigatory training courses that Burnett had not taken. Burnett points to her longer job experience and absence of complaints about her internal investigations work. All true. But those facts don't create an inference of discrimination. *Lidge-Myrtil v. Deere & Co.*, 49 F.3d 1308, 1311 (8th Cir. 1995). Burnett also highlights

timing: Lawson completed her forty-hour CID training course in April 2022 but wasn't given the internal affairs tasks until four months later in August 2022. That timing could indicate retaliation. But it doesn't create an inference of discrimination.

Burnett also brings discrimination claims related to her placement on administrative leave. The parties spar over whether she was placed on leave with or without pay. The Court holds that, either way, this forced leave was an adverse employment action. *Muldrow*, 601 U.S. at 354–55. The Court assumes that Burnett established the other elements of a *prima facie* case.

Here, too, Chief Strickland had a non-discriminatory reason for his decision: Burnett was placed on leave while he investigated Montana Smith's complaint. Burnett must therefore show pretext. She emphasizes the circumstances. Smith is Daniel Lawson's step-daughter. Burnett had accused Daniel Lawson of racially profiling and excessive force. Chief Strickland knew that Burnett planned to testify at Mahone's imminent trial. He ended her administrative leave the same day that Mahone's charges were dismissed. All this points toward retaliation—more on that claim to come. But there's nothing here indicating that Chief Strickland was motivated by Burnett's race or sex.

Burnett also says that she is the only employee placed on leave without pay, which demonstrates pretext. But she hasn't provided

essential evidence that the other employees she compares herself to—Daniel Lawson, Acosta, Turley, and Ashley Lawson—were similarly situated in all relevant respects. *Carter v. Pulaski County Special School District*, 956 F.3d 1055, 1058 (8th Cir. 2020). Each proposed comparator's situation was too different from Burnett's to create a triable issue on her discrimination claims. Turley was accused of unnecessarily shooting a dog. Daniel Lawson was accused of racial profiling and excessive force. Acosta was, too; he was also accused of not meeting the qualifications for being a police officer. Someone who wasn't a doctor allegedly signed a medical verification card for Ashley Lawson. None of these other officers transmitted a job applicant's confidential information internally without taking adequate precautions.

Regarding her hostile work environment claim, Burnett says that, in addition to losing the internal affairs duties and being placed on administrative leave, Chief Strickland and her coworkers became distant and talked behind her back. But she can only speculate that this behavior was motivated by her race or sex. *Doc. 19-1 at 54–57.* That speculation isn't enough to defeat summary judgment. *Clay v. Credit Bureau Enterprises, Inc.*, 754 F.3d 535, 541 (8th Cir. 2014). Plus, the described conduct isn't sufficiently severe or pervasive to constitute a hostile work environment. *Woods v. Collins*, 150 F.4th 967, 973 (8th Cir. 2025).

\*

Burnett brings a claim for retaliation under Title VII and the corresponding section of the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-108. *Doc. 2 at 8–11.* But the activity that she was allegedly retaliated against for—publicly accusing Daniel Lawson and Acosta of racially profiling Mahone and using excessive force—isn't protected by those statutes. *Bonn v. City of Omaha,* 623 F.3d 587, 590–92 (8th Cir. 2010); *Burkhart v. American Railcar Industries, Inc.,* 603 F.3d 472, 477 (8th Cir. 2010) (Title VII and ACRA retaliation claims are analyzed the same). Stated differently, there's no unlawful employment practice involved in the things Burnett spoke about. Marianna is therefore entitled to summary judgment on those claims.

Burnett did not plead a speech-based retaliation claim (through § 1983) under the First Amendment and Fourteenth Amendment. She did not plead a retaliation claim under the Arkansas Civil Rights Act. Ark Code Ann. § 21-1-601, *et seq.* These potential claims, and any defenses, have not been explored in the briefing. They present complicated and nuanced legal issues. *E.g., Doc. 84* in *Anderson v. May,* Case No. 4:23-cv-747-DPM (E.D. Ark. 26 September 2025). Those issues lurk in the record, but they have not been brought forward in clear pleadings and adversarial briefing for an informed decision.

\*

Motion for summary judgment, *Doc. 17*, granted. Burnett's motion *in limine*, *Doc. 68*, is denied as moot. Her motion to keep certain documents under seal, *Doc. 67*, is partly granted and partly denied. The Court directs the Clerk to unseal and file on the public docket the following documents in their entirety: *Doc. 50, 51, 52, 57, 58, 59 & 60*. Regarding Burnett's response to the motion for summary judgment, *Doc. 49*, and its many attached exhibits, the Court rules as follows:

- Burnett agrees that the response itself and exhibits 1–5, 8, 9, 13–17, 23–27, and 30–38 should not be sealed. The Court directs the Clerk to unseal and file those documents on the public docket.

- Burnett has not made an adequate showing that exhibits 7 and 12 should remain under seal. The Court directs the Clerk to unseal and file those documents on the public docket, too.

- For good cause, exhibits 6, 10, 11, 18–22, and 29 shall remain under seal.

So Ordered.

_____
D.P. Marshall Jr.
United States District Judge

27 March 2026

−10−